IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-21812-CIV-HUCK/O'SULLIVAN

COTY INC., ZINO DAVIDOFF SA,
CALVIN KLEIN TRADEMARK TRUST,
and CALVIN KLEIN COSMETIC CORPORATION

       Plaintiffs,

  v.

C LENU, INC., CARIDAD RODRIGUEZ, and VICTOR
L. RODRIGUEZ

       Defendants.

**PLAINTIFFS' MOTION TO COMPEL DISCOVERY
FROM NON-PARTY MIAMI PERFUME JUNCTION**

Pursuant to this Court's Order on September 23, 2010 (ECF No. 109), Plaintiffs Coty Inc., Zino Davidoff SA, Calvin Klein Trademark Trust, and Calvin Klein Cosmetic Corporation (collectively, "Plaintiffs") respectfully submit this Motion to Compel Discovery from Non-Party Miami Perfume Junction, Inc. ("MPJ").

**BACKGROUND**

Plaintiffs have brought trademark infringement, unfair competition, and dilution claims against Defendants for the unlawful removal of product codes from fragrance products bearing Plaintiffs' marks ("Plaintiffs' Fragrance Products"). (Verified Compl. ¶ 6 (ECF No. 2).) These codes are essential to Plaintiffs' quality assurance, anti-counterfeiting, and anti-theft programs. Among other things, they enable Plaintiffs to resolve quality issues, implement targeted recalls of defective products, and to identify counterfeit and stolen products. (*Id.* ¶¶ 35-38). The Courts of Appeals for the Eleventh and Second Circuit have held that removing the codes from Plaintiffs' fragrance products transforms genuine products into infringing products. *Davidoff &*

*Cie, SA v. PLD Int'l Corp.*, No. 00-2635, 2000 WL 1901542, at *4 (S.D. Fla. Sept. 25, 2000), *aff'd*, 263 F.3d 1297, 1302 (11th Cir. 2001); *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 244 (2d Cir. 2009).

MPJ is a wholesaler of fragrance products, including Plaintiffs' Fragrance Products. MPJ obtained fragrance products bearing Plaintiffs' marks from as yet unidentified suppliers and sent them to Defendants for decoding. MPJ then sold those tampered products (the "Decoded Products") to as yet unidentified wholesalers or retailers, who in turn offered them for sale to consumers.

Plaintiffs' have brought this motion to compel MPJ to disclose (1) the persons or entities who supplied the products bearing Plaintiffs' marks that were decoded by Defendants to MPJ in the first instance and (2) the purchasers of the Decoded Products. For the following reasons, this information is both relevant and discoverable. This information was sought both in Plaintiffs' requests for production of documents (MPJ has redacted this information from the documents that it produced) and during the deposition of MPJ's 30(b)(6) witness on August 23, 2010.

## ARGUMENT

**I.     The Information Sought Is Relevant to Plaintiffs' Claims.**

Rule 26 of the Federal Rules of Civil Procedure provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including . . . the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). MPJ's customers and suppliers have information relevant to Plaintiffs' trademark infringement, unfair competition, and dilution claims and therefore their identities are discoverable.

### A. The Identities of MPJ's Customers Are Relevant to Demonstrating Likelihood of Confusion

Plaintiffs have asserted claims against Defendants for direct and contributory trademark infringement and unfair competition under federal and state law. Defendants are introducing decoded fragrance products into the stream of U.S. commerce. Decoded products may be stolen or counterfeit. In any event, decoded products lack the quality controls that Plaintiffs exercise over genuine product. (Verified Compl. ¶ 39.) Both the Eleventh Circuit and the Second Circuit have held that the sale of decoded fragrance products violates the Lanham Act and applicable state law. *See PLD*, 263 F.3d 1297; *CVS*, 571 F.3d 238.

Plaintiffs have found that decoded fragrance products are frequently intermingled with counterfeit and genuine fragrances by the time they reach retailers. (Verified Compl. ¶¶ 4, 41.) For example, in the *CVS* case, Plaintiffs discovered counterfeit, decoded and genuine DAVIDOFF COOL WATER fragrances on the shelves of CVS retail stores being offered for sale for exactly the same price. *See CVS*, 2000 WL 1901542, at *2 (noting that Davidoff's inspectors identified 836 units that were counterfeit and 16,600 units that were decoded gray-market products of the 33,369 units inspected in CVS's inventory) In effect, CVS, a seemingly legitimate drugstore chain, passed off the inferior decoded and counterfeit product as the genuine product to hapless consumers by intermingling decoded, counterfeit, and genuine product.

The touchstone for trademark infringement and unfair competition under Sections 32 and 43 of the Lanham Act is likelihood of confusion. Likelihood of confusion generally involves weighing a number of factors, including the parties' respective channels of trade and how the products are presented to consumers in the marketplace. *See Congra, Inc. v. Singleton*, 743 F.2d 1508, 1514 (11th Cir. 1984) (identifying "similarity of the sales methods, i.e., retail outlets or customers" as one of the likelihood of confusion factors); *see also* Restatement (Third) of Unfair

3

Competition § 21, cmt. a (1995) ("No mechanistic formula or list can set forth in advance the variety of elements that comprise the market context from which likelihood of confusion must be determined."). As a result, in order to establish how Defendants' decoded product is presented to purchasers in the marketplace, Plaintiffs are entitled to disclosure of the identities of MPJ's customers.

In addition, MPJ's customers could have evidence, such as consumer complaints, that demonstrates actual confusion, which is another one of the standard likelihood of confusion factors. *Congra*, 743 F.2d at 1514. Although actual confusion is not required to prove likelihood of confusion, courts deem it compelling evidence. *Id.* (noting that actual confusion is the "most persuasive factor"). Moreover, consumer complaints about the quality of Decoded Products, whether because Defendants damaged the product or because the products were stolen or counterfeit, are also relevant to prove the serious harm to Plaintiffs caused by Defendants' infringing activities, as well as Plaintiffs' claim for dilution by tarnishment (Verified Compl. ¶¶ 80-82, 89-90); s*ee also, e.g.*, *CVS*, 571 F.3d at 246 (noting that "consumers may regard a product whose packaging has been tampered as inferior and perhaps suspicious"); *Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991) ("If the Star Award looks cheap or shoddy, or is disseminated without regard to the ultimate recipient, the Oscar's distinctive quality as a coveted symbol of excellence . . . is threatened.").

**B.     The Identities of MPJ's Customers and Suppliers Are Relevant to Demonstrate that Decoded Products are Materially Different.**

This Circuit has held that "the resale of a trademarked product that is materially different can constitute trademark infringement." *PLD*, 263 F.3d at 1302. "A material difference is one that consumers consider relevant to a decision about whether to purchase a product." *Id.* Plaintiffs have alleged that the Decoded Products are materially different in part because

4

Defendants' decoding of Plaintiffs' Fragrance Products and the introduction of such products into the distribution chain interferes with Plaintiffs' anti-counterfeiting efforts, (*id.* ¶ 20-21). *See CVS*, 571 F.3d at 244 (finding that the removal of the code was a material difference because it interfered with Zino Davidoff's ability to detect counterfeits).

Plaintiffs know from past experience that decoded products may be counterfeit or stolen, and even if they are not, decoded products are often found in mixed shipments with counterfeit or stolen products. (Verified Compl. ¶ 4 (noting that decoded fragrance products "are frequently commingled with counterfeit fragrances), ¶ 41 (noting that decoded fragrance products "are frequently found in mixed shipments with counterfeit products"); *see also Zino Davidoff SA v. CVS Corp.*, No. 06-cv-15332, 2007 WL 1933932, at *6 (S.D.N.Y. July 2, 2007) ("[W]hen large batches of decoded product enter the market, even if the majority of that product is produced by Davidoff, counterfeiters can use the en masse sale of decoded products as cover for their illicit marketing efforts."), *aff'd*, 571 F.3d 238 (2d Cir. 2009). The removal of the product codes from Plaintiffs' Fragrance Products makes it more difficult for Plaintiffs to identify counterfeit and stolen products in the marketplace and therefore more likely that consumers will purchase such products and attribute the substandard quality to Plaintiffs. *See CVS*, 571 F.3d at 247 ("Davidoff's evidence showed a likelihood that the absence of codes increased the risk that consumers would unwittingly purchase counterfeit or defective product because of the disabling of Davidoff's device to guard against these things."). Moreover, the fact that seemingly legitimate retailers have offered for sale, genuine, decoded and counterfeit fragrance products at the exact same price on their retail shelves underscores both the likelihood of confusion and harm to Plaintiffs and the public that is caused by the decoding of fragrance products.

5

### C. The Identities of MPJ's Suppliers Are Relevant to Defendants' First Sale Defense.

Defendants have raised the first sale doctrine as a defense. (Defs.' Answer 11-12 (ECF No. 49).) Under the first sale doctrine, the resale of genuine goods is not a trademark infringement. *PLD*, 263 F.3d at 1301-02. Plaintiffs cannot determine whether the Decoded Products at issue were originally manufactured by Plaintiffs, and therefore cannot rebut this defense, without knowing where these products originated.

The Decoded Products have already entered the stream of commerce. Accordingly, Plaintiffs cannot tell whether these products were counterfeit or stolen products or whether they were purchased from Plaintiffs or another authorized source. Surely, Plaintiffs should be given an opportunity to explore whether Defendants are involved in decoding the counterfeit and stolen goods that are polluting the market and to pinpoint where, in the unauthorized distribution chain, those products are introduced.

Accordingly, for the reasons set forth above, the identities of MPJ's customers and suppliers of the Decoded Products are relevant to Plaintiffs' claims in this action.

### II. MPJ Has Not Demonstrated that Disclosure Would Be Harmful.

Even assuming arguendo that the identities of MPJ's customers and suppliers are trade secrets, MPJ has not demonstrated that there would be any cognizable harm from disclosure of this information. Plaintiffs and MPJ are not competitors, and MPJ can avail itself of the Protective Order entered in this case. (*See* Stipulated Protective Order ¶ 4 (ECF No. 63).) It appears that MPJ's main concern is that Plaintiffs will subpoena these entities for relevant information regarding their involvement in the unlawful decoding of Plaintiffs' Fragrance Products and subsequent distribution of such products to consumers. As this Court recognized

during the oral arguments on this matter, this is not a proper basis for barring otherwise relevant discovery.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court compel MPJ to disclose the customers and suppliers of the Decoded Products.


Date:   October 1, 2010                                  Respectfully submitted,

**LOTT & FRIEDLAND, P.A.**

s/ Jaime Rich Vining
By: Leslie J. Lott (Florida Bar No. 182196)
    Jaime Rich Vining (Florida Bar No. 30932)
    355 Alhambra Circle
    Suite 1100 (zip code: 33134)
    Post Office Drawer 141098
    Coral Gables, Florida 33114
    (305) 448-7089 telephone
    (305) 446-6191 telecopier
    e-mail: ljlott@lfiplaw.com
    e-mail: jrvining@lfiplaw.com

and

**KILPATRICK STOCKTON LLP**
Lisa Pearson (LP 4916) (*pro hac vice*)
Robert Potter (RP 5757) (*pro hac vice*)
31 West 52nd Street, 14th Floor
New York, NY 10019
(212) 775-8700 telephone
(212) 775-8800 telecopier
e-mail: lpearson@kilpatrickstockton.com
e-mail: rpotter@kilpatrickstockton.com

Andrew Pequignot (*pro hac vice*)
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
(404) 815-6500 telephone
(404) 815-6555 telecopier
e-mail: apequignot@kilpatrickstockton.com

*Attorneys for Plaintiffs Coty, Inc., Zino Davidoff SA, Calvin Klein Trademark Trust, and Calvin Klein Cosmetics Corporation*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the referenced date, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the following Service List in the Manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

**Barry Marc Boren, Esq.**
9100 S Dadeland Blvd.
Suite 1800
Miami, FL 33156
305-670-2200
Fax: 305-670-9672
Email: borenlaw@bellsouth.net

I also certify that the foregoing document is being served this day by U.S. Mail and Electronic Mail on the following:

**Joseph A. DeMaria, Esq.** (counsel for Miami Perfume Junction, Inc.)
Tew Cardenas LLP
Four Seasons Tower, 15th Floor
1441 Brickell Avenue
Miami, Florida 33131
305-536-1112
Fax: 305-536-1116
Email: jad@tewlaw.com

                                                          s/ Jaime Rich Vining  \_\_\_\_\_
                                                             Jaime Rich Vining