## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 10-21812-CIV-HUCK/O'SULLIVAN

COTY INC., ZINO DAVIDOFF SA,
CALVIN KLEIN TRADEMARK TRUST
and CALVIN KLEIN COSMETICS
CORPORATION,

       Plaintiffs,

v.

C LENU, INC., CARIDADE RODRIGUEZ, and
VICTOR L. RODRIGUEZ,

       Defendants.

_____/

### NON-PARTY MIAMI PERFUME JUNCTION, INC.'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY AND CROSS-MOTION FOR PROTECTIVE ORDER AND FOR AN AWARD OF EXPENSES

Non-Party, Miami Perfume Junction, Inc. ("MPJ"), pursuant to Fed. R. Civ. P. 37 and 26,

respectfully submits its Response to Plaintiffs' Motion to Compel Discovery [D.E. 115], and

submits this Cross-Motion for Protective Order and for An Award of Expenses, and states:

### BACKGROUND

Plaintiffs, Coty Inc., Zino Davidoff SA, Calvin Klein Trademark Trust, and Calvin Klein

Cosmetic Corporation (collectively "Plaintiffs" or "Coty") are manufacturers of fragrance

products.  Plaintiffs filed this lawsuit against Defendants C Lenu, Inc., Caridad Rodriguez, and

Victor L. Rodriguez (collectively "Defendants") for trademark infringement, unfair competition,

and dilution stemming from the alleged unlawful removal of product codes from fragrance

products bearing Plaintiffs' marks.  Plaintiffs' claims are based on the decisions of *Davidoff &*

*Cie, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1302 (11th Cir. 2001) and *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238 (2d Cir. 2009).  *See* Complaint, D.E. 2 at ¶¶ 5; D.E. 115 at pp. 1-2.

Shortly after their lawsuit was filed, Plaintiffs commenced third party discovery. Plaintiffs apparently found documents during their investigation of, or discovery from, the Defendants that led them to MPJ.  MPJ is a lawful wholesale distributor of fragrances, including Coty products.  MPJ used Defendant C Lenu, Inc. to decode certain Coty fragrances.

On July 14, 2010, Plaintiffs served non-party MPJ with a subpoena for documents.  In their subpoena, Plaintiffs requested documents and information relating to MPJ's distribution and sales of Plaintiffs' products.  On July 28, 2010, MPJ responded to the subpoena and provided Plaintiffs with responsive documents on August 11, 2010.[1]  Pursuant to Rule 45(c)(3)(B)(1), Fed. R. Civ. P., MPJ objected to the subpoena to the extent it sought protected, confidential information.

On September 21, 2010, MPJ, while continuing to assert its right to protect confidential information, provided Plaintiffs with supplemental responsive documents relating to MPJ's sales of decoded Coty products, including, but not limited to: (1) invoices sent by MPJ to its customers relating to Coty decoded products; and (2) invoices sent by suppliers to MPJ relating to Coty products that were decoded by Defendant, C Lenu, Inc.[2]  The documents MPJ produced included a description of Coty products purchased or sold, and the unit prices for such products purchased or sold.  The ***only*** information redacted from the documents was the identity of MPJ's customers

---

[1] MPJ's Response to the Subpoena and cover letter enclosing MPJ's responsive documents are attached hereto as **Composite Exhibit "A"**.

[2] A copy of the cover letter enclosing MPJ's supplemental responsive documents and an explanation for the redaction of certain documents is attached hereto as **Exhibit "B"**.

and suppliers, and information relating to non-Coty products and non-decoded products (including pricing information relating to non-Coty products).

MPJ further cooperated in Plaintiffs' discovery efforts by providing a Fed. R. Civ. P. 30(b)(6) deposition of MPJ's corporate representative.   MPJ's President appeared at the deposition and answered all of Plaintiffs' questions, with one, limited exception – MPJ's President, upon instruction of counsel, did not answer questions that would reveal the identity of MPJ's suppliers and customers.[3]

Prior to and at the beginning of the Rule 30(b)(6) deposition, MPJ raised its objection to disclosing supplier and customer identities, and invoked the protections of the Stipulated Protective Order entered by this Court on July 29, 2010.[4]  [D.E. 63].  After the deposition, MPJ preserved confidentiality by designating as confidential the portions of the deposition transcript which discussed supplier and customer information.[5]

Disclosure of the identity of MPJ's customers and suppliers will cause substantial harm to MPJ, including the very real threat that such disclosure could undermine MPJ's legitimate business.  This harm greatly outweighs any possible relevance or necessity of the identity of MPJ's customers and suppliers.

While MPJ has protected its trade secrets, MPJ has also been fulsome in providing discovery to Plaintiffs.  Plaintiffs explained their need for documents relating to the sale of

---

[3] A copy of the relevant excerpts of the deposition transcript of counsel's instruction to MPJ is attached hereto as **Exhibit "C"**.  MPJ's President did, however, answer questions about one supplier because Plaintiffs' counsel had learned of that supplier's identity from its discovery of defendants and asked direct questions relating to that supplier.

[4] A copy of undersigned counsel's e-mail to Plaintiffs' counsel invoking the Stipulated Protective Order is attached hereto as **Exhibit "D"**.

[5] A copy of undersigned counsel's letter designating confidential portions of the deposition transcript is attached hereto as **Exhibit "E"**.

Plaintiffs' products, which they claim to be relevant to Plaintiffs' calculation of lost profits and damages.  Accordingly, MPJ provided Plaintiffs with documents reflecting a description of Coty products purchased or sold, and the unit prices for such products purchased or sold.

Additionally, even after the September 23, 2010 informal discovery conference before the Magistrate Judge, MPJ made a good faith offer for a complete resolution of the remaining discovery requests through an agreement to disclose to Plaintiffs the identity of MPJ's customers under specific terms, and an agreement by Plaintiff not to further pursue the identity of MPJ's suppliers.   Undersigned counsel made the following proposal to resolve this last remaining discovery issue:

> In an effort to avoid unnecessary costs and motion practice, my clients have authorized me to suggest a resolution of the discovery issues.  Miami Perfume Junction would be prepared to provide the identity of the customers from the redacted documents that they produced, pursuant to the confidentiality agreement.  In addition to the confidentiality agreement, you would agree that this information cannot be used in creating any claim against Miami Perfume Junction.  Beyond the confidentiality agreement would be two additional conditions.  First, since we do not know whether the Defendants will default during the next month, Coty and Miami Perfume Junction would agree that Coty cannot contact any of Miami Perfume Junction's identified customers until after the Court resolves the issue of whether this case is indeed proceeding to trial.  And, if the case does not proceed to trial, the agreement would be that Coty return the discovery to us and promise not to contact the customers or otherwise reveal this confidential information.  Second, if and only if Coty's case is proceeding to trial, and if you determine the need to contact any or all of these customers to prove your case, you must first give us one week advance notice before contacting the customers.
>
> The reason we are offering to disclose the identity of customers, under these restrictive conditions, is an effort to accommodate what we believe to be the Court's desire to allow you to take discovery in support of your claims while not allowing unnecessary or damaging discovery.  We would agree to provide this customer information under these conditions on the condition that you withdraw your request for the identity of Miami Perfume Junction's suppliers. [6]

---

[6] A copy of undersigned counsel's good faith attempt to resolve this discovery disputes is attached hereto as **Exhibit "F"**.

Plaintiffs rejected the offer and proceeded to file their motion to compel.[7]

## ARGUMENT

**I.  Plaintiffs Are Improperly Seeking Disclosure of MPJ's Trade Secrets and Confidential Information, While Conducting an Improper Fishing Expedition for New Claims.**

Despite the well-established law that protects parties from disclosing their trade secrets and confidential information, despite MPJ's cooperation in providing Plaintiffs with the discovery in MPJ's possession, and despite MPJ's offer to provide Plaintiffs with its customer list, Plaintiffs press forward with their predatory discovery tactics.  In their conclusory and unfounded motion to compel, Plaintiffs argue that the identity of MPJ's customers and suppliers is relevant to Plaintiffs' existing claims and to the First Sale defense raised by Defendants.

Specifically, Plaintiffs claim that they need the identity of the suppliers and customers because: (1) the identities of MPJ's suppliers and customers are relevant to Plaintiffs' anti-counterfeiting efforts and to demonstrating that decoded products are materially different; (2) the identity of MPJ's suppliers are relevant to Defendants' First Sale defense; and (3) the identities of MPJ's customers are relevant to demonstrating likelihood of confusion.  However, Plaintiffs do not meet the Rule 26 discovery standard because they fail to show sufficient relevance and necessity for the identity of MPJ's customers and suppliers to Plaintiffs' ***claims*** in this case. Plaintiffs further fail to demonstrate that their need for this information outweighs the harm that would result to MPJ in disclosing the identity of its suppliers.

Rules 26 and 45 of the Federal Rules of Civil Procedure contain specific sections which allow a party to seek protection against disclosure of their trade secrets and confidential information.  *See* Fed. R. Civ. P. 26(c)(1)(D) (providing that a protective order may be sought to

---

[7] A copy of Plaintiffs' counsel's e-mail to undersigned counsel is attached hereto as **Exhibit "G"**.

ensure that "a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way"); Fed. R. Civ. P. 45(c)(3)(B)(1) (upon motion, a Court may quash or modify a subpoena that seeks the disclosure of "a trade secret or other confidential research, development, or commercial information").[8]

Rule 26(b) allows a party to discover non-privileged information "that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The 2000 Amendments to Rule 26 were intended to narrow the scope of discovery to the actual claims and defenses involved in the action. *See* Fed. R. Civ. P. 26(b)(1) Advisory Committee Notes to 2000 Amendments; *see also Collens v. City of New York*, 222 F.R.D. 249, 252 (S.D.N.Y. 2004).

Rule 26 does not allow a party to conduct a fishing expedition for new claims, which is exactly what Plaintiffs are doing in this case. *Collens*, 222 F.R.D. at 253 (citations omitted) ("While Rule 26(b)(1) still provides for broad discovery, courts should not grant discovery requests based on pure speculation that amounts to nothing more than a 'fishing expedition' into actions or past wrongdoing not related to the alleged claims or defenses"); *see also Zeinali v. Raytheon Co.*, No. 07cv01852-JM (CAB), 2008 WL 4820993 at *2 (S.D. Cal. Nov. 3, 2008) (citing Fed. R. Civ. P. 26(b)(1) and refusing to allow plaintiff to take excess depositions, finding that plaintiff's explanation for the need of depositions "suggests strongly that he is probing for information to assert new claims rather than obtaining evidence related to the claims at issue in this litigation").

---

[8] *See, e.g., Cytodyne Techs., Inc. v. Biogenic Techs., Inc.*, 216 F.R.D. 533 (M.D. Fla. 2003) (denying motion to compel and finding that active customer lists were trade secrets); *Star Scientific, Inc. v. Carter,* 204 F.R.D. 410 (S.D. Ind. 2001) (granting a protective order for trade secrets, including customer lists); *Drexel Heritage Furnishing, Inc. v. Furniture USA, Inc.*, 200 F.R.D. 255 (M.D.N.C. 2001) (granting a protective order pertaining to defendants' supplier lists); *In re Independent Service Organizations Antitrust Litigation*, 162 F.R.D. 355 (D. Kan. 1995) (issuing a supplemental protective order specifically to protect the identities of suppliers).

At the September 23, 2010 discovery conference before this Court, this Court recognized that Plaintiffs are only entitled to discovery that is "relevant to the claims in this case."  *See* Hearing Transcript, p. 24 at lines 7-8.[9]  This Court stated:

> Now, I mean, it appears to me that the counterfeit claim is not a claim in this case and discovery has changed then whatever it was 10 years ago.  You no longer bring a claim and then do a bunch of discovery to find out what is going on.  You bring your claim and you do discovery regarding only that claim.

*Id.* at p. 24, lines 9-14.  Plaintiffs are seeking to support their discovery request for the precise reason that this Court correctly recognized to be improper – using the discovery process to try to test out potential claims and to get information which is beyond their pled claims in this case.

In doing so, Plaintiffs are abusing the discovery procedures against a non-party.  In the case of obtaining discovery from non-parties, courts employ a case-specific balancing test, weighing factors such as relevance, the need for the documents requested, and the time period covered by the requests against the burden imposed on the person ordered to produce the desired information.  *Cytodyne Techs., Inc.*, 216 F.R.D. at 535 (holding that non-party's customer lists were not subject to disclosure).[10]

Once the non-party shows that the requested discovery is a trade secret and its disclosure might be harmful, the burden shifts to the party seeking the discovery to show that the information sought is ***relevant and necessary*** to proving its claims.  *Cytodyne Techs., Inc.*, 216

---

[9] A copy of the transcript of the September 23, 2010 discovery conference is attached hereto as **Exhibit "H"**.

[10] *See also Fadalla v. Life Automotive Prods.*, 258 F.R.D. 501 (M.D. Fla. 2007) (holding that non-party was not required to produce information relevant to a speculative claim, information covered under non-disclosure agreements with its suppliers and customers, and confidential financial and marketing information); *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525 (D. Del. 2002) (granting non-party's motion to quash subpoena seeking trade secrets and financial information because discovering party failed to carry its burden of demonstrating need and relevance).

F.R.D. at 536 (holding that defendant failed to demonstrate that its need for the non-party's disclosure of its customer list outweighed the harm that would result to the non-party from the disclosure); *see also Micro Motion Inc. v. Kane Steel Co. Inc.*, 894 F.2d 1318, 1323 (Fed. Cir. 1990) ("Discovery may not be had regarding a matter which is not 'relevant to the subject matter involved in the pending action' Fed. R. Civ. P. 26(b)(i). *Even if relevant*, discovery is not permitted where no need is shown . . . .") (emphasis in original); *Echostar Commc'ns Corp. v. The News Corp. Ltd.*, 180 FRD 391, 394 (D.C. Colo. 1998).[11]  Plaintiffs have utterly failed to meet this balancing test.

## II. Plaintiffs Fail to Establish That They Need Supplier and Customer Identity to Prove a Material Product Difference.

Plaintiffs claim that the identity of suppliers is relevant to demonstrating that decoded products are materially different from Plaintiffs' Fragrance Product, and that the introduction of decoded products into the distribution chain interferes with Plaintiffs' anti-counterfeiting efforts. [D.E. 115 at pp. 4-5].  However, Plaintiffs do not carry their burden of showing that the identity of suppliers or customers is necessary to establish a material difference.

First, "[w]hether differences are material so that an alleged infringer's products are nongenuine is *a matter of law*." *Iberia Food Corp. v. Romeo*, 150 F.3d 298, 303 (3rd Cir. 1998); *see also John Paul Mitchell Sys. v. Pete-n-Larry's Inc.*, 862 F. Supp. 1020, 1027 (W.D.N.Y. 1994).  Courts which have determined whether a material difference existed between the trademark owners' goods and the goods sold by an alleged infringer have not used actual customers or suppliers to assist in making that determination.  *See, e.g., Iberia Food Corp.*, 150

---

[11] Courts employ a balancing of interests test under Rule 26(c)(1) in determining whether good cause exists, balancing a party's interest in obtaining the information against the other party's interest in keeping the information confidential.  *See Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001) (citing *Farnsworth v. Proctor & Gamble, Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985)).

F.3d at 305 (determining that there was no material difference in product sold by trademark owners' goods and alleged infringer's goods, without using testimony from actual customers or suppliers in making that determination); *John Paul Mitchell Sys.*, 862 F. Supp. at 1023 (determining that obliteration of batch codes on hair care products created a material difference as a matter of law, without using testimony of actual customers or suppliers in making that determination).

Second, Plaintiffs themselves state that "[a] material difference is one that ***consumers*** consider relevant to a decision about whether to purchase a product." [D.E. 115 at pp. 4] (citing *PLD*, 263 F.3d at 1302). Plaintiffs make no mention of why the identity of ***suppliers*** is necessary to establish a material difference. The purpose of the material differences test is to determine whether an allegedly infringing product is likely to injure the goodwill of a trademark owner's goods, and focuses on the issue of likelihood of ***customer confusion***. *Iberia Food Corp.*, 150 F.3d at 303; *John Paul Mitchell Sys.*, 862 F. Supp. at 1023 (stating that "the pivotal question in the instant case becomes whether there exists a material difference between the products sufficient to create the likelihood of customer confusion"). Therefore, the identity of suppliers is neither relevant nor necessary to Plaintiffs' ability to establish a material difference.

Third, Plaintiffs' own *PLD* case does not support Plaintiffs' position. In *PLD*, the district court decided the issue of material difference, and the Eleventh Circuit affirmed that finding. There was no mention of actual customers being called to testify as to whether they were actually confused. In fact, the district court "credited the testimony of the marketing vice-president that the etching may make a consumer think that the product had been harmed or tampered with." *PLD*, 263 F.3d at 1303. In other words, the issue of material difference and customer confusion is decided by courts, without actual customers testifying as to whether they were confused about

the genuineness of a product.  Accordingly, Plaintiffs have failed to establish that they need the identity of customers or suppliers to prove material difference.

### III.  Plaintiffs' Claim that the Discovery is Relevant and Necessary to the Issue of Counterfeit is Belied by Plaintiffs' Own Pleadings in this Case.

Plaintiffs claim that the identity of MPJ's suppliers and customers is also relevant because "Plaintiffs know from past experience that decoded products may be counterfeit or stolen, and even if they are not, decoded products are often found in mixed shipments with counterfeit or stolen products."  [D.E. 115 at p. 5].  Plaintiffs also claim that this discovery is relevant because "[t]he removal of the product codes from Plaintiffs' Counterfeit Fragrance Products makes it more difficult for Plaintiffs to identify counterfeit and stolen products in the marketplace and therefore more likely that consumers will purchase such products and attribute the substandard quality to Plaintiffs."  [D.E. 115 at p. 5].  Yet, Plaintiffs stop short of showing that any of these reasons relate to Plaintiffs' actual *claims in this case*.  In fact, Plaintiffs have taken the position, before this Court, that this is not a counterfeiting case.

In their Complaint, Plaintiffs do not allege that Defendants sold counterfeit products bearing Plaintiffs' mark.  Plaintiffs' main allegations are based mainly upon trademark dilution stemming from decoding ***Plaintiffs'*** fragrance products.

In Plaintiffs' Ex-Parte Motion for Expedited Discovery to Prevent the Spoliation of Evidence by Defendants and Supporting Memorandum of Law ("Motion for Expedited Discovery") [D.E. 3], Plaintiffs state "***this case does not involve counterfeits*** (yet) . . . ."  [D.E. 3 at p. 15] (emphasis added).  In Plaintiffs' Opposition to Defendants' Motion for Leave to Amend [D.E 102], Plaintiffs state:

Plaintiffs never sought their expedited discovery order pursuant to the Lanham Act's ex parte seizure provisions.  To the contrary, Plaintiffs explicitly advised the Court that Section 34(d) only applies in the context of counterfeit goods *and this case does not involve allegations of counterfeiting*.

[D.E. 102 at p. 9] (emphasis added).

Plaintiffs cannot ignore their representations to this Court in an effort to seek discovery that is beyond their pleadings.  The fact that Plaintiffs have included the counterfeiting argument in their motion to compel, after this issue was discussed at the September 23, 2010 hearing and the Court commented that the counterfeiting allegation is not supported by the pleadings, shows their predatory discovery conduct.  Plaintiffs are determined to learn the identity of MPJ's suppliers, and are willing to ignore their own formal position before this Court if it suits their present purposes.  This Court should not tolerate such conduct.

Further, Plaintiffs' burden does not end at relevance.  Plaintiffs must also show the necessity for the identity of MPJ's suppliers.  Plaintiffs do not make a single mention of the *need* for the identity of MPJ's suppliers or customers to prove Plaintiffs' unpled counterfeit claims.  Even beyond that, Plaintiffs cannot establish that the relevance and need for this information outweighs the potential harm that MPJ may suffer from disclosing such information.  *See* Section V, *infra*.

Finally, Plaintiffs' reliance on the *CVS* case is misplaced.  In *CVS*, the plaintiffs' inspectors actually identified 836 units that were counterfeit.  In this case, Plaintiffs have not alleged that they have found *even one* counterfeit product.  In Plaintiffs' Motion for Expedited Discovery [D.E. 3], Plaintiffs state that they have been conducting an "extensive undercover investigation dating back to 2006," yet they have failed to come up with any evidence of counterfeiting.  [D.E. 3 at p. 3, 7, 10].  *See, e.g., Drexel Heritage*, 200 F.R.D. at 261, n. 9 (holding that the "plaintiffs would have to show actual counterfeit furniture prior to the Court

permitting a fishing expedition into defendants' supplier lists").  Because Plaintiffs have failed to meet the very first prong of the balancing test – relevance and need – their motion to compel the identity of MPJ's suppliers should be denied.

### IV.  Plaintiffs Have Failed to Demonstrate the Relevance and Need of the Identity of MPJ's Suppliers and Customers to Rebut Defendants' First Sale Defense.

Plaintiffs also claim that they need the identity of MPJ's customers and suppliers in order to rebut Defendants' "First Sale" defense.  [D.E. 115 at 6].  However, Plaintiffs cite no authority to support their position that MPJ's confidential trade secrets are necessary to rebut a First Sale defense.  The only case Plaintiffs cite is *PLD*, which again was not a decision based on any evidence from actual suppliers or customers.

Further, in Plaintiffs' Opposition to Defendants' Motion for Leave to Amend [D.E 102], Plaintiffs state that "[n]one of C Lenu's proposed 'affirmative defenses,' other than laches and unclean hands, are true affirmative defenses." [D.E. 102 at p. 21].  Plaintiffs go on to state in that motion that the First Sale defense "is futile because the Eleventh and Second Circuits have held that, once decoded, Plaintiffs' fragrance products are 'materially different' from the original trademarked product as a matter of law and therefore not subject to the First Sale doctrine. *Davidoff & CIE*, 263 F.3d at 1303; *Zino Davidoff*, 571 F.3d 238 at 246."  [D.E. 102 at p. 21].  Plaintiffs cannot, on the one hand, claim that they need the identity of MPJ's suppliers and customers to rebut Defendants' First Sale defense and, on the other hand, claim that there is a legal rebuttal to the First Sale defense (which obviously would not require the identity of MPJ's suppliers).

Finally, Plaintiffs do not need the identity of MPJ's suppliers or customers to rebut the First Sale defense.  Under the First Sale defense:

> A trademark-holder is able to exercise exclusive distribution rights with respect to the first sale of goods bearing the trademark.  Once the trademark-holder has sanctioned the release of the goods into the stream of commerce, however, [its] right of control is exhausted, and the subsequent sale of that item cannot serve as a basis for an infringement suit.

4 Callman on Unfair Comp., Tr. & Mono. § 22:45 (4th Ed.).  In this case, the "first sale" would focus on the sale from Coty to its distributors, not from the suppliers to MPJ or MPJ to the customers.  It has already been established through MPJ's document production and Rule 30(b)(6) deposition that MPJ sells Coty products to customers, so this is not in dispute.

Therefore, MPJ should not be required to disclose the identity of its suppliers or customers.  *See, e.g., Empire of Carolina v. Mackle,* 108 F.R.D. 323, 327 (S.D. Fla. 1985); *see also Everco Industries, Inc. v. O.E.M. Products Co.,* 362 F. Supp. 204 (N.D. Ill. 1973) (finding that "[b]y the very nature of the parties business relationships, there are certain documents which are confidential and should not be discovered without sufficient cause").

### V.    Plaintiffs Have Not Shown that the Need for the Identity of MPJ's Suppliers Outweighs the Harm that Would Result to MPJ from Disclosure of Such Information.

Even if this Court finds that Plaintiffs have established the relevance and need for MPJ's suppliers, this Court has to balance MPJ's right to protect the identity of its suppliers and the very real harm that would result from MPJ disclosing its suppliers.  *See, e.g., Cytodyne Techs., Inc., supra.*  Plaintiffs have failed to tip the scale in their favor by showing that their need for the identity of the suppliers outweighs the harm that would result to MPJ's legitimate business if it discloses the suppliers' identity.

Supplier lists are confidential trade secrets entitled to protection, and courts have dealt with balancing a discovering party's claimed need for supplier identity against a responding party's right to protect supplier identity against predatory discovery.  *See, e.g. Drexel Heritage,*

200 F.R.D. 255 (granting a protective order pertaining to defendants' supplier lists); *Independent Serv. Organizations*, 162 F.R.D. 355 (issuing a protective order to protect the identities of suppliers).  Courts have time and again recognized the importance of maintaining supplier information as confidential to avoid driving a party out of business.

In *Drexel Heritage, supra*, furniture manufacturers sued furniture retailers, alleging that defendants misrepresented to customers that the furniture that the defendants was selling came directly from the plaintiffs.  200 F.R.D. at 257.  Plaintiffs claimed that, because they only sold to authorized representatives, defendants' representations to customers were false.  *Id.*  Plaintiffs also claimed that defendants may have been selling counterfeit furniture, thereby damaging plaintiffs' trademarks and reputation.  *Id.*  Plaintiffs issued discovery to defendants requesting, among other things, the identity of defendants' suppliers and prices that defendants' charged their customers for the furniture.  *Id.*  On plaintiffs' motion to compel and defendants' motion for protective order, the Court held that the identity of the suppliers was relevant to plaintiffs' claims or defenses, ***but*** the harmful effect of the disclosure of defendants' suppliers outweighed plaintiffs' need for the information.  *Id.* at 262.

In reaching its conclusion, the *Drexel Heritage* court held that the defendants "sustained their burden of showing confidentiality".  *Id.* at 261.  The court then focused on the harm that could result to the defendants from the disclosure of the suppliers' identity.  The court considered the potential loss of business, sales, and reputation that defendants' may suffer from plaintiffs' predatory and harassing practices.  *Id.* at 261, n. 7.  The court stated:

> [T]here is some potential risk of cognizable harm if plaintiffs obtain the information should they use it to dissuade the suppliers from dealing with defendants.  Plaintiffs have done nothing to persuade the Court that such fears are without foundation, such as by showing that plaintiffs will not contact or take any action against suppliers who are identified.  This is another factor in defendants' favor.

*Id.* at 261.  Next, the court considered the suppliers' fear of their identities being revealed, and found that the effect of disclosure on the non-party suppliers was a persuasive factor in favor of defendants' showing of potential harm.  *Id.*[12]

Similarly, in *Independent Service Organizations*, the plaintiff requested an order protecting it from revealing the identities of its confidential suppliers to the defendant. 162 F.R.D. at 357.  The plaintiff produced invoices relating to its purchase of products from its suppliers, but redacted all identifying information of the suppliers.  The plaintiff sought to withhold only the identity of the suppliers, but agreed to disclose all other non-identifying information relative to its purchases from the suppliers, including part numbers, quantities, dates, prices, and shipping.  The plaintiff argued that even an inadvertent disclosure in violation of the protective order already in place would be severely detrimental to its business because it may result in the cut off of its important supply source. *Id.*  The court, balancing the defendants' need for the trade secret against plaintiff's claim of harm that would result from such disclosure, held that disclosure of the identities of the suppliers would be harmful and issued a supplemental protective order.  *Id.* at 358.

These two cases are directly on point with the case at hand.  Here, the identity of MPJ's suppliers should be protected because the harm of disclosure greatly outweighs any relevance or

---

[12] The court also rejected the plaintiffs' claim that they needed the supplier information to pursue their counterfeit claim.  The court held that plaintiffs had failed to make any prima facie showing that they have information indicating that the furniture was counterfeit. The court refused to allow "a tremendous invasion into defendants' privacy without plaintiffs ever having presented any basis for their conclusory speculation of counterfeiting."  *Id.* at n. 8.  The court held that the "plaintiffs would have to show actual counterfeit furniture prior to the Court permitting a fishing expedition into defendants' supplier lists." *Id.* at n. 9 (citing *In re Independent Service Organizations Antitrust Litigation, supra*).

necessity of the information for this action.  Just as in *Drexel Heritage* and *Independent Service Organizations*, MPJ has cooperated by providing invoices sent by MPJ to its customers relating to Coty decoded products and invoices sent by suppliers to MPJ relating to Coty products that were decoded by Defendant, C Lenu, Inc.  These invoices included a description of Coty products purchased or sold, and the unit prices for such products purchased or sold.  The only information redacted from the documents was the identity of MPJ's customers and suppliers, and information relating to non-Coty products and non-decoded products.  As the *Drexel Heritage* Court noted, redacting supplier information is an appropriate measure to protect trade secrets during discovery.[13]  Furthermore, since Plaintiffs have admitted that this is not a counterfeiting case, and since Plaintiffs failed to uncover any counterfeits in their "extensive undercover investigation dating back to 2006," Plaintiffs are not entitled to any supplier information.  *See Drexel Heritage*, 200 F.R.D. at 261, n. 9.

Finally, MPJ has demonstrated that disclosure of supplier identity would harm MPJ's legitimate business.  This Court cannot overlook the fact that ordering MPJ's disclosure of supplier identity would trigger Plaintiffs to *carte blanche* issue subpoenas to all of MPJ's

---

[13] In the *Drexel Heritage* case, the defendants proposed that disclosure of their supplier lists be limited to outside attorneys' eyes only, and the plaintiffs in that case did not propose an alternative plan. *Id.* at 262.  The Court stated:

> While not mentioned by the parties, another way of dealing with this situation would be for defendants to produce the information **with the suppliers identities redacted**.  However, neither party has suggested that procedure and, therefore, the Court is left with adopting defendants' proposed procedure that documents or interrogatories containing the identities of suppliers to defendants of plaintiffs' products shall be for plaintiffs' outside counsel's eyes only.

*Id.* (emphasis added).  In this case, MPJ did exactly what the Court in *Drexel Heritage* suggested – it redacted the identity of its suppliers, which is an entirely appropriate way to respond to Plaintiffs' subpoena.

suppliers.   In turn, there is a very real threat that suppliers would refuse to continue to do business with MPJ, which will drive MPJ out of its legitimate business.   In the Rule 30(b)(6) deposition, MPJ's counsel explained the danger, and MPJ's President confirmed how sensitive suppliers are about their identity being revealed and the reason that suppliers request that Plaintiffs' products be decoded in the first place:

> Q:  . . . Do you know why [SUPPLIER] has C Lenu decode fragrances?
>
> . . .
>
> THE WITNESS: I would not know why they would want it, but, again, going back to the same thing ***they would want it because they want their name out***. . . [14]

(Emphasis added).  If MPJ is required to reveal the identity of suppliers, who clearly want their identity to remain confidential, then suppliers would stop doing business with MPJ altogether.

The court in *Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511 (S.D.N.Y. 2004) realized the threat of eliminating a party's business by forcing it to reveal its suppliers.  In that case, the plaintiff, Gucci, urged the court to enjoin one of the defendants from selling any Gucci merchandise ever, whether real or counterfeit. *Id.* at 523.  The court held that such a remedy was too extreme.  *Id.*  The court also refused to force the party to reveal its sources to plaintiff, stating:

> [T]he Court is mindful of [defendant's] claim that revealing his sources to Gucci effectively amounts to eliminating those sources and to drive him entirely out of the Gucci business. . . .  Were the Court to permit [defendant] to sell Gucci merchandise only if he notified Gucci of the source of those goods, the Court recognizes the string possibility that such relief would effectively bar [defendant] from ever selling authentic Gucci merchandise – a sanction the Court has already stated is too severe and inconsistent with this country's notions of free enterprise and vigorous competition.

---

[14] This deposition testimony can be found at p. 98, lines 8-15 of the August 23, 2010 deposition of MPJ's President.  Pursuant to the Stipulated Protective Order, MPJ designated excerpts of its representative's deposition transcript as confidential.  *See* Ex. E.  MPJ does not believe that Plaintiffs will dispute that MPJ's representative provided the above-referenced testimony.  However, in the event that Plaintiffs dispute this testimony, MPJ seeks the permission of this Court to file the relevant deposition under seal.

*Id.* at 524.

MPJ has demonstrated that it protects the identity of its suppliers because disclosure of their identity will cause substantial harm to MPJ.  Plaintiffs should not be permitted to destroy a non-party's legitimate business through its litigation with Defendants.  To the extent that Plaintiffs argue that a protective order in this case is enough, Plaintiffs' argument still fails because they cannot establish relevance and need.[15]  Accordingly, Plaintiffs' request for supplier identity should be denied entirely.

### VI.   Plaintiffs Have Failed to Demonstrate the Relevance and Need for the Identity of MPJ's Customers to Prove Likelihood of Confusion.

Plaintiffs claim that the identity of MPJ's customers is relevant to demonstrating likelihood of confusion.  The decisions that Plaintiffs rely on – *PLD*, 263 F.3d 1297 and *CVS*, 571 F.3d 238 – do not support their request.  Neither of these cases addressed the need for actual customer identity in proving likelihood of confusion.  [D.E. 115 at pp. 4-5].  Both of these cases were decided without reference to actual evidence from customers of confusion.  Unless Plaintiffs are prepared to formally inform this Court that the two decisions that they secured in federal courts are insufficient to sustain their claims in this case, they cannot even take the first step of establishing their need for the identity of MPJ's customers.

Plaintiffs also rely upon *Congra, Inc. v. Singleton*, 743 F.2d 1508, 1514 (11th Cir. 1984) and *Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991), but those cases are distinguishable.  They involved disputes over two separate but similar products, and involved actual customer confusion of the products.  In this

---

[15] *See Micro Motion, supra*, at 1325; *Echostar, supra,* at 396 ("The existence of a protective order in this case, even a fairly restrictive order, does not persuade me to alter my conclusions.  The protective order does not negate the fact that the information sought by Echostar is only marginally relevant. . . .").

case, Plaintiffs' Complaint is based upon the Defendants' decoding of *Plaintiffs'* product, and Plaintiffs do not allege either that customers were actually confused or that Defendants were selling counterfeits.

### VII. If Plaintiffs Properly Support the Need for the Identity of MPJ's Customers, then MPJ Should Only be Required to Disclose Its Customers, and be Compensated for Reasonable Attorneys' Fees and Costs Incurred in Defending Plaintiffs' Motion.

As explained above, undersigned counsel offered to provide the identity of MPJ's customers to Plaintiffs' counsel, under reasonable conditions designed to protect MPJ's legitimate interests.  Plaintiffs' counsel refused, and filed its motion to compel discovery, still failing to set forth the relevance and need for such information.  To date, Plaintiffs have not shown the need for discovering the identity of MPJ's customers.  If Plaintiffs ever properly support the need for the identity of MPJ's customers, then MPJ should only be required to disclose the identity of its customers, but *not* the identity of MPJ's suppliers.  And any disclosure should be under the conditions set forth in MPJ's offer to resolve this discovery dispute.  Ex. F.

Finally, because MPJ made a reasonable offer to resolve this discovery dispute by providing Plaintiffs with the identity of MPJ's customers, which Plaintiffs rejected, MPJ is entitled to the attorneys' fees and expenses incurred in defending Plaintiffs' motion to compel. *See* Fed. R. Civ. P. 37 (a)(5)(B); *Duval v. Law Office of Andreu, Palma & Andreu, PL.* No. 09-22636-CIV, 2010 WL 1998358 at *2 (S.D. Fla. 2010); *Armor Screen Corp. v. Storm Catcher, Inc.*, No. 07-81091, 2009 WL 1871685 (S.D. Fla. 2009).

## <u>CONCLUSION</u>

MPJ is a non-party to this action and has cooperated in providing Plaintiff with extensive discovery, at a significant expense.  MPJ has the right to protect its confidential business information, and Plaintiff has failed to support its demand for the identity of MPJ's suppliers or customers.  When MPJ, in an effort to resolve this discovery dispute, offered a reasonable production of additional information, Plaintiff rejected that offer and demanded a total capitulation.  This court should deny the motion to compel.  And even if this Court were to find that Plaintiff met its burden of securing the identity of customers, then such disclosure should be under the conditions requested by MPJ.  Finally, this Court should award MPJ its expenses, including an award of attorneys' fees.

> Respectfully submitted,
> **TEW CARDENAS LLP**
> Attorneys for Miami Perfume Junction, Inc.
> 1441 Brickell Avenue, 15th Floor
> Miami, Florida   33131
> Telephone:     (305) 536-1112
> Facsimile:      (305) 536-1116
>
>
> By: s/ Joseph A. DeMaria
>     **Joseph A. DeMaria, Esq.**
>     Florida Bar No. 764711
>     **Maria P. Gonzalez**
>     Florida Bar No. 0011646

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 15th, 2010, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

**Leslie J. Lott**
**Jaime Rich Vining**
**LOTT & FRIEDLAND, P.A.**
355 Alhambra Circle
Suite 1100
Coral Gables, Florida 33114
(305) 448-7089 telephone
(305) 446-6191 telecopier
e-mail: ljlott@lfiplaw.com
e-mail: jrvining@lfiplaw.com

**Lisa Pearson**
**Robert Potter**
**KILPATRICK STOCKTON LLP**
31 West 52nd Street, 14th Floor
New York, NY 10019
(212) 775-8700 telephone
(212) 775-8800 telecopier
e-mail: lpearson@kilpatrickstockton.com
e-mail: rpotter@kilpatrickstockton.com

**Andrew Pequignot**
**KILPATRICK STOCKTON LLP**
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
(404) 815-6500 telephone
(404) 815-6555 telecopier
e-mail: apequignot@kilpatrickstockton.com

**Barry Marc Boren, Esq.**
9100 S Dadeland Blvd.
Suite 1800
Miami, FL 33156
(305) 670-2200 telephone
(305) 670-9672 telecopier
Email: borenlaw@bellsouth.net

s/ Joseph A. DeMaria
**Joseph A. DeMaria, Esq.**

546841.1